**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
In re:                       :
                             :
OLIN WINDFIELD PAIGE, III,   :   Chapter 7 Bankr. Case No.
and TAWNEY MARIE PAIGE,      :   22-20769 (JTT)
                             :
          Debtor.            :
                             :
-----------------------------x
                             :
POINTE RESIDENTIAL BUILDERS  :
BH, LLC,                     :
                             :   Adv. Bankr. Case No.
          Plaintiff,         :   23-2019 (JJT)
     v.                      :
                             :
OLIN WINDFIELD PAIGE, III,   :
                             :
          Defendant.         :
                             :
-----------------------------x
                             :
OLIN WINDFIELD PAIGE, III,   :
                             :
          Appellant,         :
     v.                      :
                             :   Civ. No. 3:24-cv-799(AWT)
POINTE RESIDENTIAL BUILDERS  :
BH, LLC,                     :
                             :
          Appellee.          :
                             :
-----------------------------x
```

<u>**RULING ON BANKRUPTCY APPEAL**</u>

Debtor and Appellant Olin Windfield Paige, III ("Paige")
appeals from a decision of the United States Bankruptcy Court,
which was rendered in an adversarial proceeding initiated by
Appellee Pointe Residential Builders BH, LLC ("Pointe") against

1

Paige. On appeal, Paige argues that the Bankruptcy Court abused its discretion in denying his motion to set aside default and in granting Pointe's motion for default judgment against Paige. For the reasons that follow, the judgment of the Bankruptcy Court is being affirmed.

I.   **BACKGROUND**

  A. **Superior Court Action**

In February 2020, Paige was found liable to Pointe, after a bench trial in Connecticut Superior Court, for breach of contract, unjust enrichment, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA"). See Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC, Superior Court, Judicial District of Stamford-Norwalk, Docket No. CV-18-6037047, 2020 WL 1231575 (Feb. 18, 2020) ("February 2020 Ruling"). Paige's liability to Pointe in that action arose out of "a contract for the construction of a condominium", which was between Pointe and TMP Construction Group, a limited liability corporation of which Paige was the manager and controlling member. Id. at *1. The Superior Court found that Paige had induced Pointe to submit payment for "all the estimated costs of materials and equipment" needed for the project "by representing that the funds would be used to buy the materials ahead of time to avoid a twenty percent price increase on drywall expected in January 2017." Id.

"Unknown to Pointe but known to TMP and Paige, TMP did not intend to use these funds to acquire materials and equipment for the Project but instead intended to use the funds to finance its payroll and work on other projects." Id.  "Unknown to Pointe, but known to TMP and Paige, TMP was in a shaky financial condition when it convinced Pointe to pay the deposit and failed to disclose it needed the frontloaded payment to remain in business and do other projects." Id. Soon after, "TMP's financial house of cards came tumbling down." Id.

In finding Paige and TMP jointly liable to Pointe for unjust enrichment, the Superior Court concluded that unjust enrichment was an appropriate remedy because they "deceiv[ed] Pointe into paying a deposit not required under the Contract and requisitioned in violation of contract terms and under false pretenses." Id. at *2. The Superior Court found that "TMP and Paige never intended to use the deposit to order materials and equipment for the Project as represented." Id.

In finding TMP and Paige liable on the CUTPA claim, the Superior Court concluded:

> Paige was aware the deposit was requisitioned for material procurement for the Project but was not intended or used for the purposes represented, but failed to disclose this contrary intention to Pointe. Paige used the funds provided by Pointe to pay other expenses of TMP unrelated to the Project. Moreover, the financial circumstances and needs of [TMP] were such that Paige was aware that TMP would not be able to finish the Project or pay Pointe back if TMP's expenses grew or cash flow was disrupted and recklessly

3

exposed Pointe to this risk. The deposit was obtained by
false pretenses through misrepresentations about its need
and intended use and failure to disclose TMP's actual plan
to finance the Project, including materials and equipment,
[through] cash flow and supplier credit lines. . . . TMP's
and Paige's business plan and practice to finance the
Project, the Viking Project, and various other ongoing
projects, was literally "robbing Peter to pay Paul," with
Pointe exposed to substantial risks well beyond the scope
of the Contract. The scheme circumvented protections
against overpayment written into the contract terms. . . .
This conduct was deceptive, unethical and unscrupulous and
constituted an unfair and deceptive business practice in
violation of CUTPA.

Id. at *2. The Superior Court determined that Pointe was

"entitled to recover compensatory damages of $224,878,"

"reasonable attorneys fees", and "punitive damages in the amount

of $225,000 under [CUTPA,] because . . . defendants' conduct . .

. was intentional, willful and done with reckless indifference

to Pointe's rights". Id. at *4-5 (citing Conn. Gen. Stat. §§ 42-

110g(a)-(d)).

The judgment of the Superior Court was affirmed by the

Connecticut Appellate Court in June 2022. See Pointe Residential

Builders BH, LLC v. TMP Constr. Grp., LLC, 213 Conn. App. 445,

447–51 (Conn. App. Ct. 2022).

**B. Bankruptcy Proceedings**

In October 2022, Paige and Tawney Marie Paige jointly filed

a voluntary chapter 7 petition in the United States Bankruptcy

Court for the District of Connecticut. On November 15, 2023,

Pointe filed a complaint to initiate an adversary proceeding

against Paige, seeking "a determination that a debt of
$463,519.77 plus interest owed" to Pointe pursuant to the
Connecticut Superior Court judgment was non-dischargeable under
11 U.S.C. § 523(a) and Federal Rules of Bankruptcy Procedure
4007 and 7001(6). Memorandum of Decision, <u>Pointe Residential
Builders BH, LLC v. Olin Windfield Paige, III</u>, Adv. Bankr. No.
23-2019 (JJT) (D. Conn. Bankr. Apr. 17, 2024) (ECF No. 1-2)
("April 2024 Memorandum of Decision") at 2.

On November 15, 2023, a summons issued and Paige was put on
notice that he was required to file a response to Pointe's
complaint by December 15, 2023. <u>See</u> Bankr. Ct. Docket, Adv.
Bankr. No. 23-2019 (ECF No. 13) at 2. Paige filed an appearance
on December 4, 2023, but did not file a response. <u>See</u> <u>id.</u> On
January 19, 2024, Pointe filed a request for entry of default
for failure to plead, which the Clerk of the Bankruptcy Court
entered on January 22, 2024. <u>See</u> <u>id.</u>

On February 14, 2024, Paige filed a motion to set aside
default and a motion for an extension of time to file an answer,
claiming that family medical issues, which arose on January 17,
2024 and February 9, 2024, had prevented him from timely filing
a response. Pointe timely objected to Paige's motion. <u>See</u> <u>id.</u> at
3.

A hearing was held on February 29, 2024. On March 5, 2024,
the Bankruptcy Court denied Paige's motion to set aside default,

and scheduled a hearing for March 27, 2024 to discuss Pointe's pending motion for a default judgment. In denying Paige's motion to set aside default, the Bankruptcy Court explained that Paige had "not demonstrated good cause to set aside the default." Memorandum of Decision & Order, <u>Pointe Residential Builders BH, LLC v. Olin Windfield Paige, III</u>, Adv. Bank. No. 23-2019 (JJT) (Bankr. D. Conn. Mar. 5, 2024) ("March 2024 Memorandum of Decision") at 9. It found that Paige's "default was willful, his defense is not meritorious, and Pointe has been prejudiced." <u>Id.</u> It set forth in detail its analysis as to why Paige did not have a meritorious defense. <u>See id.</u> at 5-8. The Bankruptcy Court also found that Pointe had "been prejudiced by not only the imposition of delay, but by the assertion of frivolous defenses and the imposition of more fees and expenses to obtain relief regarding a largely indisputable item." <u>Id.</u> at 8. Finally, the Bankruptcy Court found that Paige's default was "willful," based on Paige's "sustained and inexcusable failure to answer the Complaint to this date." <u>Id.</u> at 8. The Bankruptcy Court stated that it was not persuaded by Paige's contentions that his lack of a response "was not deliberate or intentional," or that his "problems with CM/ECF," his "inability to obtain counsel," or his "family medical issues," which post-dated his procedural default, served as grounds for a finding to the contrary. <u>Id.</u>

On March 15, 2024, Paige filed an objection to Pointe's pending motion for default judgment. On March 22, 2024, Paige filed an answer to Pointe's complaint and moved for the Bankruptcy Court to reconsider its denial of his earlier motion to set aside default. In his answer, Paige asserted that his debt to Pointe did not arise out of "intentional" fraud and that the Superior Court had found only that he had engaged in "reckless" conduct, so his debt was dischargeable. See Defs. Answer, Pointe Residential Builders BH, LLC v. Olin Windfield Paige, III, Adv. Bankr. No. 23-2019 (JJT) (Bankr. D. Conn., filed Mar. 22, 2024)(Bankr. Docket ECF No. 36).

The same day, the Bankruptcy Court denied Paige's motion for reconsideration, stating that such a motion was an inappropriate vehicle for litigating the issues Paige raised but Paige could raise such issues at the upcoming hearing on Pointe's pending motion for default judgment. See April 2024 Memorandum of Decision at 5. The hearing was held on March 27, 2024, and the Bankruptcy Court granted Pointe's motion for default judgment on April 17, 2024. It entered judgment in favor of Pointe in the amount of $463,519.77. The Bankruptcy Court referenced the analysis in the March 2024 Memorandum of Decision regarding Paige's failure to show "good cause" and found that Pointe "has met its burden to establish its entitlement to have the debt owed to it deemed nondischargeable under § 523(a)(2)(A)

of the Bankruptcy Code." April 2024 Memorandum of Decision at 10-11. The Bankruptcy Court addressed false representation under 11 U.S.C. § 523(a)(2)(A) but did not address false pretense or actual fraud under that subsection. It also addressed nondischargeability under § 523(a)(4) and § 523(a)(6).

On April 30, 2024, Paige filed an appeal from the judgment of the Bankruptcy Court.

## II.  STANDARD OF REVIEW

"A district court has jurisdiction to hear appeals of final bankruptcy orders pursuant to 28 U.S.C. § 158(a)[]." In re White, 183 B.R. 356, 358 (D. Conn. 1995). "A default judgment is a final action by the district court in the litigation [and] one that may be appealed." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). "In an appeal from a default judgment," reviewing courts "may review both the interlocutory entry of default and the final [default] judgment" for abuse of discretion. Diakuhara, 10 F.3d at 95. Accord City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128, 131 (2d Cir. 2011).

"The abuse-of-discretion standard incorporates de novo review of questions of law . . . and clear-error review of questions of fact." United States v. Legros, 529 F.3d 470, 474 (2d Cir. 2008). See In re Charter Commc'ns, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012)("the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of

law de novo"). Accord In re Motors Liquidation Co., 957 F.3d 357, 360 (2d Cir. 2020).  A finding of fact is only "'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Separately, a bankruptcy court's failure to properly consider and apply the correct legal standard to the adjudication of an material issue would amount to an abuse of discretion. See In re Aquatic Dev. Grp., Inc., 352 F.3d 671, 678 (2d Cir. 2003) ("we have defined [abuse of discretion] as . . . a decision 'rest[ing] on an error of law (such as application of the wrong legal principle) . . . '" (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001)).  Cf. L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., 79 F.3d 258, 262 (2d Cir. 1996) ("'A failure to consider relevant factors or to apply the proper legal standard constitutes such an abuse [of discretion]'" (citation omitted)).

## III. DISCUSSION

Appellant argues that the Bankruptcy Court abused its discretion in denying his motion to set aside default and in entering default judgment against him. He contends that the Bankruptcy Court's findings were erroneous with respect to the

willfulness of Appellant's default, the prejudice suffered by the plaintiff, and Appellant's ability to present a meritorious defense. The court sees no error in the Bankruptcy Court's analysis.

Under Rule 55(a) of the Federal Rules of Civil Procedure, when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). This rule applies in adversary proceedings in United States Bankruptcy Courts. See Fed. R. Bankr. P. 7055. This "first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." Mickalis Pawn Shop, 645 F.3d at 128.

After the clerk has entered default against a defendant, the plaintiff may request the clerk to enter default judgment, and "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation,the clerk--on the plaintiff's request, with an affidavit showing the amount due-- must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations

contained in the complaint." Mickalis Pawn Shop, 645 F.3d at 137 (citation omitted). "[T]he court has considerable latitude in deciding whether to require plaintiff to produce evidence in support of the claims before entering such a judgment." Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984).

The defaulting party, however, may move for "the court [to] set aside an entry of default for good cause," or for the court to "set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Under Rule 60(b), on "motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" for several enumerated reasons, including "excusable neglect" and "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

"The dispositions of motions for entries of default and default judgments and relief from the same under Rule 55(c) are left to the sound discretion [of the Bankruptcy Court] because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Diakuhara, 10 F.3d at 95. "Such discretion is nonetheless not unlimited," which is a reflection of the Second Circuit's oft-stated "preference for resolving disputes on the merits." Id.

Consequently, courts considering motions to set aside default or vacate a default judgment must determine whether the

moving party has demonstrated "good cause." <u>See</u> Fed. R. Civ. P. 55(c). <u>See also</u> <u>Guggenheim Cap., LLC v. Birnbaum</u>, 722 F.3d 444, 454 (2d Cir. 2013) ("A party challenging the entry of a default judgment [even under Rule 60(b)] must satisfy the 'good cause shown' standard in Rule 55(c)"). "Because Rule 55(c) does not define the term 'good cause,' [the Second Circuit has] established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment." <u>Diakuhara</u>, 10 F.3d at 96. "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." <u>Id.</u> <u>Accord</u> <u>In re Chalasani</u>, 92 F.3d 1300, 1307 (2d Cir. 1996).

With respect to the first factor, i.e., willfulness, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." <u>S.E.C. v. McNulty</u>, 137 F.3d 732, 738 (2d Cir. 1998). "'[W]illfulness,' in the context of a default, . . . refer[s] to conduct that is more than merely negligent or careless." <u>Id</u>. With respect to the second factor, i.e., prejudice to the adversary, "delay alone is not a sufficient basis for establishing prejudice." <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983). "Something more must be shown." 10 Charles Alan Wright & Arthur R. Miller & Mary Kay Kane, <u>Federal</u>

Practice and Procedure: Civil, § 2699 at 536–37 (1983).
"[C]ourts have recognized that opening a default may prejudice a
litigant in a number of ways" and that "delay itself . . . may
result in the loss of evidence, create increased difficulties of
discovery, or provide greater opportunity for fraud and
collusion." Id. With respect to the third factor, "to make a
sufficient showing of a meritorious defense in connection with a
motion to vacate a default judgment, [a] defendant need not
establish his defense conclusively, but he must present evidence
of facts that, if proven at trial, would constitute a complete
defense." McNulty, 137 F.3d at 740 (citations and internal
quotation marks omitted).

    "Other relevant equitable factors may also be considered,
for instance, whether the failure to follow a rule of procedure
was a mistake made in good faith and whether the entry of
default would bring about a harsh or unfair result." Diakuhara,
10 F.3d at 96. "[A]s a general rule," courts "should grant a
default judgment sparingly and grant leave to set aside the
entry of default freely when the defaulting party is appearing
pro se," due to "heightened" "concerns regarding the protection
of a [pro se] litigant's rights." Id. A court that grants a
default judgment "should provide specific reasons for a denial
of a motion to set aside a default." Id. at 97.

For the reasons that follow, the court concludes that there was no error with respect to the Bankruptcy Court's finding that Appellant's default was willful, that setting aside the default would prejudice Pointe, and that Appellant had failed to present a meritorious defense.

## A. **Willfulness of the Default**

The Bankruptcy Court found "willfulness in the Debtor's sustained and inexcusable failure to answer the Complaint" as of March 5, 2024. March 2024 Memorandum of Decision at 8. The Bankruptcy Court's finding was supported by the record. Paige filed an appearance on December 4, 2023 and was required to file a response to the complaint by December 15, 2023. He did not file a response when the request for entry of default was filed, nor when default was entered, nor when he filed his motion to set aside default, nor when the hearing was scheduled and then held on February 29, 2024. Thus his failure was sustained. His family medical issues, as reported by him, occurred a month or more after he had been required to file a response, and under the circumstances, it was not an abuse of discretion for the Bankruptcy Court to find unpersuasive all of his explanations for the delay and conclude that it was inexcusable. "[T]he court where the default was taken . . . is in the best position to assess the credibility and motives of the moving party." In re Chalasani, 92 F.3d at 1307.

B. **Prejudice to Pointe**

The Bankruptcy Court concluded that Pointe "has been prejudiced by not only the imposition of delay, but by the assertion of frivolous defenses and the imposition of more fees and expenses to obtain relief regarding a largely indisputable claim." March 2024 Memorandum of Decision at 8. This finding was not clearly erroneous. See Reisman v. Ne. Power & Gas LLC, 720 F. Supp. 3d 279, 290 (S.D.N.Y. 2024) ("Some courts have recognized expenditure of resources as prejudicial; others have not. . . . Reopening the case . . . would merely delay the inevitable (given the absence of any meritorious defense) and require [the non-defaulting party] to incur additional litigation costs that it may well not be able to recover"); Directv, Inc. v. Rosenberg, No. 02-cv-2241 (RCC), 2004 WL 345523, at *4 (S.D.N.Y. Feb. 24, 2004)(finding prejudice where the "[d]efendant's obstinate conduct has caused Plaintiff to incur substantial attorney's fees and costs").

C. **Sufficient Showing of a Meritorious Defense**

"It is well settled that preclusion principles apply in bankruptcy proceedings." Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006). "[C]ollateral estoppel may be used to establish the nondischargeability of a debt." In re Snyder, 939 F.3d 92, 100 (2d Cir. 2019) (citing Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991)). "The preclusive effect of a state court judgment in a

subsequent federal lawsuit generally is determined by the full faith and credit statute, . . . 28 U.S.C. § 1738." <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985). "This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered." <u>Id.</u> "'It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'" <u>Id.</u> (quoting <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 481-82 (1982)). Accordingly, this court refers to Connecticut law on collateral estoppel.

Under Connecticut law, "[c]ollateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." <u>MacDermid, Inc. v. Leonetti</u>, 328 Conn. 726, 739 (2018) (quoting <u>Lyon v. Jones</u>, 291 Conn. 384, 406 (2009)). "'For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.'" <u>Id.</u> "'An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact

determined.'" Id. "'An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.'" Id. "'If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action.'" Id.

In the April 2024 Memorandum of Decision, the Bankruptcy Court analyzed 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6) for the purpose of determining whether the debt is nondischargeable. It concluded that the debt is nondischargeable under each of those sections. Pursuant to § 523(a), nondischargeable debts include those "for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. 523(a)(2)(A). With respect to § 523(a)(2)(A), the Bankruptcy Court only addressed false representations because that was the only issue addressed by Paige's motion. Because the court is affirming the Bankruptcy's Court judgment on the basis of its analysis with respect to false representations under § 523(a)(2)(A), it does not address nondischargeability under § 523(a)(4) and § 523(a)(6).

"To prevail on a section 523(a)(2)(A) claim [based on a false representation], a plaintiff must establish five elements:

17

(1) the defendant made a false representation; (2) at the time the representation was made, the defendant knew it was false; (3) the defendant made the representation with intent to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff sustained loss or damage as a proximate consequence of the false representation." In re McCann, 634 B.R. 207, 216 (Bankr. D. Conn. 2021). Thus, the court must determine whether the Bankruptcy Court properly concluded that the elements for collateral estoppel were satisfied with respect to each of these elements of a § 523(a)(2)(A) claim based on false representations.

Appellant does not contest the Bankruptcy Court's conclusion that the requirements for collateral estoppel are satisfied with respect to elements (1), (2), (4), and (5), and, in any event, the record shows that those requirements are satisfied. The findings from the Superior Court with respect to the CUTPA claim, quoted above, reflect that the deposit was obtained by Paige's false representations; that Paige intended to use the deposit for purposes other than what he had represented, so he knew his representations were false; that Pointe had protections against overpayment written into the contract terms and relied on Paige's representations with respect to how the funds would be used; and that Pointe paid a deposit that was not required under the contract.

Appellant argues that the requirements for collateral estoppel are not satisfied with respect to the third element of a claim for false representation under § 523(a)(2)(A). Before the Bankruptcy Court, Paige "reiterate[d] his argument from his Motion to Set Aside Default that the Superior Court's articulation found him to be reckless but not intentional." April 2024 Memorandum of Decision at 13. This argument was discussed by the Bankruptcy Court at pages 13 to 15 of the April 2024 Memorandum of Decision. See id. at 13-15. This court agrees with the Bankruptcy Court that:

> The Debtor has been overly focused on the final sentence of the Superior Court's September 24, 2020 articulation, in which it stated: " As to the intention to divert the deposit for other uses, the evidence of defendants' business practices as well as the failure to use the deposit for the purposes represented and diversion of the funds indicated that defendants intended throughout to use the deposit to finance its operations and other projects and that the diversion of the deposits was intentional and/or reckless under the circumstances."

Id. at 14 (quoting Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC, No. FST-CV-18-6037047-S, 2020 WL 6121376, at *2 (Conn. Super. Ct. Sept. 24, 2020)("September 2020 Ruling")). The final clause of that sentence relates to the diversion of the deposit and states that the diversion of the deposit was "intentional and/or reckless under the circumstances." Id. Appellant's reliance on this final clause of the sentence about the diversion of the deposit is misplaced, for two reasons.

First, it appears that the Superior Court's ruling on the motion for articulation deals only with the claim for unjust enrichment. See September 2020 Ruling, at *1 (explaining that the "Court [previously] found that the contractual remedy was not inconsistent with the equitable remedy for unjust enrichment"). Second, this part of the September 2020 Ruling reflects that the evidence showed two things: (1) that the defendants intended throughout to use the deposit to finance TMP's operations and other projects, instead of for the purposes that had been represented to Pointe, and (2) that the diversion of the deposit was intentional and/or reckless under the circumstances. Moreover, in the February 2020 Ruling the Superior Court found that Pointe was entitled to recover punitive damages on the CUTPA claim. The basis for that conclusion was the court's finding "that defendants' conduct in requisitioning a deposit specifically for material purchases with the intention of diverting the funds for other uses and depleting the funds for purposes unrelated to the Project was intentional, willful and done with reckless indifference to Pointe's rights." February 2020 Ruling, at *4 (emphasis added).

Thus, the identical issue, i.e., whether Paige made the false representations with intent to deceive Pointe, was at issue in the Superior Court action, and it was fully and fairly litigated and actually decided. The remaining question is

whether it was necessary to the judgment in the Superior Court action. "In order to award punitive or exemplary damages [under CUTPA], evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Stone v. East Coast Swappers, LLC, 191 Conn. App. 63, 75 n.14 (Conn. App. Ct. 2019) (quotation and citation omitted) (alteration in original). In order for the Superior Court to make an award of punitive damages, it had to find that at least one of these two bases for such an award had been established. As discussed above, the Superior Court found that the defendants intended throughout to use the deposit to finance their operations and other projects, instead of for the purposes that has been represented to Pointe. This satisfied the requirement that there be a finding of an intentional and wanton violation of Pointe's rights. Therefore, resolution of the question of whether the false representations were made with intent to deceive was necessary to the judgment in the Superior Court action.

Thus, although a "clear preference exists for cases to be adjudicated on the merits," Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d. Cir. 2001), with respect to Pointe's claim of nondischargeability under § 523(a)(2)(A), this case had already been adjudicated on the merits in the Superior Court action.

**IV.**  **CONCLUSION**

For the reasons set forth above, the judgment of the

Bankruptcy Court is hereby AFFIRMED.

The Clerk shall close this case.

It is so ordered.

Signed this 15th day of January 2025 at Hartford,

Connecticut.

                                        /s/  AWT
                                    Alvin W. Thompson
                                United States District Judge